IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY D. CALDERWOOD | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-2847 |
| | : | |
| CARL ERIK RINSCH | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **November 28, 2022**

Plaintiff Gary D. Calderwood brings this diversity action against Carl Erik Rinsch for declaratory relief, breach of contract, and promissory estoppel, all arising out of an art deal gone bad. Rinsch moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Calderwood plausibly alleges breach of contract and promissory estoppel claims, his claim for declaratory relief is duplicative and therefore not actionable. As a result, Rinsch's motion will be granted in part and denied in part.

**FACTS**

Calderwood owns an art gallery in Philadelphia specializing in high-end decorative furniture. Compl. ¶ 9, ECF No. 1-1. On September 12, 2021, Calderwood received an unsolicited telephone call from Rinsch, who expressed interest in purchasing Calderwood's collection of art by French designer Jacques Adnet. *Id.* ¶¶ 11-13. Over the next two days, Calderwood sent Rinsch emails with images and prices for 21 Adnet pieces, along with information about restoration and refinishing. *Id.* ¶¶ 14-18. On September 14, Rinsch emailed Calderwood expressing his enthusiastic interest in purchasing these items, as well as four works by another artist, Jean Royére. *Id.* ¶ 19. This email included the line: "in the end I know I will be the buyer of yours." Compl. Ex. D at 2, ECF No. 1-1. On September 30, Rinsch emailed his personal assistant and instructed her

to wire funds to Calderwood. Compl. Ex. E at 1, ECF No. 1-1. On October 6, Calderwood sent a price list for the 25 Adnet and Royére pieces Rinsch wished to purchase totaling $532,720. Compl. Ex. G at 1, ECF No. 1-1. Rinsch thereafter wired him $100,000.

On November 9, 2021, Calderwood notified Rinsch via text message that another customer was interested in one of the items that was on hold for Rinsch. Compl. Ex. H at 6, ECF No. 1-1. In response, Rinsch texted, "I'll be buying it." *Id.* at 7. He also informed Calderwood "besides these here [indicating three items via photo] I'll take all the Adnet." *Id.* On November 11, 2021, Rinsch wired an additional $100,000 to Calderwood. Compl. ¶ 29. As a result, Calderwood considered the 22 pieces sold and removed them from his gallery's website. *Id.* ¶ 30.

Over the next few weeks, Calderwood and Rinsch communicated frequently via text message. *Id.* ¶ 33. Rinsch sent instructions on restoration and requested measurements and photographs of various items. *Id.* On January 11, 2022, however, Rinsch texted Calderwood that he had "some financial setbacks which will not permit us to purchase all the extraordinary work that you and your family have assembled at this time." Compl. Ex. H at 9, ECF No. 1-1. He identified the items he still wanted to buy and requested the excess funds either be returned to him or used to purchase additional pieces. *Id.* at 10. One week later, in response to a purchase agreement sent by Calderwood, Rinsch circled 12 items as identified on the agreement—his "priority" pieces—and stated "[if] balance required, please let me know." Compl. Ex. K at 1, ECF No. 1-1. On January 31, 2022, Calderwood sent Rinsch another updated invoice for just those priority pieces in the total amount of $268,200, noting that delivery information would be forthcoming. Compl. Ex. N at 2, ECF No. 1-1. Rinsch never responded. Compl. ¶ 37.

Several months later, on May 25, 2022, Calderwood emailed Rinsch inquiring about shipping. Compl. Ex. O at 1, ECF No. 1-1. Rinsch responded that he either wanted his $200,000

2

deposit back—less a 20% fee he offered for Calderwood's trouble—or only the pieces the deposit funds would cover. Compl. Ex. P at 1, ECF No. 1-1. On June 1, Rinsch again affirmed his interest in the identified items, stating that he would "arrange pickup and delivery immediately." *Id.* The next day, however, he communicated that he would need the funds returned as soon as possible. Compl. Ex. S at 1, ECF No. 1-1. Calderwood responded that the pieces had already been or were at that time being restored per Rinsch's specifications, and that he expected Rinsch to make shipping arrangements. *Id.* No furniture was ever shipped, nor were any funds returned.

Calderwood filed this suit in the Philadelphia County Court of Common Pleas, seeking to enforce the alleged contract as memorialized in the January 31, 2022 invoice, on which he is still owed $68,200. He brings three claims: Count I for declaratory relief, Count II for breach of contract, and Count III for promissory estoppel. Rinsch removed the action to federal court, and now moves to dismiss the Complaint.

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can

be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Taking all facts in the Complaint as true and drawing all inferences in Calderwood's favor, the Court finds Calderwood plausibly alleges claims for breach of contract and promissory estoppel. However, his claim for declaratory relief will be dismissed as it is duplicative of the contract claim. Rinsch's Motion to Dismiss will accordingly be granted in part and denied in part.

In Count I, Calderwood seeks a declaration that Rinsch is in breach of contract. Compl. ¶ 50. Traditionally, declaratory relief is a remedy rather than a cause of action. *See Slavko Prop., Inc. v. T.D. Bank, N.A.*, Civ. No. 14-5045, 2015 WL 1874233, at *17 (E.D. Pa. Apr. 24, 2015). As this Court has previously stated, however, the Federal Rules of Civil Procedure require courts to construe pleadings liberally "so as to do justice." *Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc.*, Civ. No. 11-7709, 2012 WL 4473240, at *9 (E.D. Pa. Sept. 28, 2012) (quoting Fed. R. Civ. P. 8(e)). While liberal construction would support Calderwood's claim for declaratory relief, judicial economy counsels the Court to decline to decide this claim because the requested relief duplicates other claims. *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) (cautioning federal courts to "decline to exercise [their] discretionary jurisdiction" when doing so would avoid duplicative litigation). Calderwood's claim seeks a declaration that Rinsch's conduct in repudiating their alleged agreement was unlawful. Compl. ¶ 50. Declaratory judgments, however, "are not meant simply to proclaim that one party is liable to another." *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014). Because adjudicating the declaratory relief claim would "necessarily involve adjudication of the issues" in the breach of contract claim, Count I will be dismissed. *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019).

The heart of this action sounds in contract. In Count II, Calderwood alleges a contract was formed on November 9, 2021, when Rinsch texted him "I'll be buying it" and "I'll take all the Adnet." Compl. ¶ 27. Rinsch counters that no such contract was formed because there was no express agreement in writing between the parties as required by law. A contract for the sale of goods over $500 is subject to the statute of frauds. 13 Pa. Cons. Stat. § 2201. The statute of frauds requires "some writing sufficient to indicate that a contract has been made between the parties and signed by the party against whom enforcement is sought." *Id.* In Pennsylvania, the essential terms required in writing are an adequately detailed description of the property or goods, the amount of consideration, and a signature. *Am. Leasing v. Morrison Co.*, 454 A.2d 555, 557 (Pa. Super. Ct. 1982).

The statute of frauds is an affirmative defense which should typically be raised in a party's answer. *See* Fed. R. Civ. P. 8(c). It may be raised in a 12(b)(6) motion to dismiss, however, if the defect appears on the "face of the pleading." *Atl. Paper Box Co. v. Whitman's Chocolates*, 844 F. Supp. 1038, 1043 (E.D. Pa. 1994) (quoting *Cont'l Collieries, Inc. v. Shober*, 130 F.2d 631, 635-36 (3d Cir. 1942)). The issue should only be considered at this stage if it presents an "insuperable barrier" to the plaintiff's recovery, *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997), such that there is no chance that "discovery may reveal that a writing exists," *Enchanted Acres Farm, Inc. v. Nature's One LLC*, Civ. No. 19-2213, 2019 WL 3545390, at *6 (E.D. Pa. Aug. 1, 2019).

Oral contracts are classic cases of facial defect, but they are not the only example. *See, e.g.*, *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470-71 (5th Cir. 2006) (explaining that a writing without a signature is a facial defect for purposes of Rule 12(b)(6)). Written agreements that are not formally memorialized—such as casual emails and text

messages—can be just as facially flawed. While some courts have found that a signed text message can constitute a writing that satisfies the statute of frauds, the November 9th texts do not have the details necessary to qualify as a "writing" under the statute. *See, e.g.*, *St. John's Holdings, LLC v. Two Elec., LLC*, Civ. No. 16-90, 2016 WL 1460477, at *1 (Mass. Land Ct. Apr. 14, 2016) (finding a text message with all the required terms and a typed signature at the conclusion of the message was a writing that satisfied the statute of frauds, as it evinced an intent to be formally bound). Rinsch's text did not include the price of the items to be purchased, nor a signature. While several writings together can satisfy the statute of frauds, at least one of them must be signed, and they must expressly reference each other. *See* Restatement (Second) Contracts § 132. Here, even though the November 9th text message may have signaled agreement to the October 6 price list, this unsigned writing did not incorporate that list by reference as it did not "clearly indicate that they relate to the same transaction." *Id.* As the absence of essential terms is obvious on the face of the Complaint, the statute of frauds presents an "insuperable barrier" to recovery under a breach of contract claim, unless an exception applies. *Flight Sys.*, 112 F.3d at 127.

While the lack of signed writing is clear on the face of the Complaint, Calderwood argues the statute of frauds does not apply to this agreement because of the statutory exception for partial payments. An agreement which does not satisfy the statute may nevertheless be enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted." 13 Pa. Cons. Stat. § 2201(c)(3)(3). Under Pennsylvania law, an entire contract may be enforceable upon receipt of only a partial payment of the contract price. *W.I. Snyder Corp. v. Caracciolo*, 541 A.2d 775, 779 (Pa. Super. Ct. 1988). Parties may thus "establish the existence of a deal by providing the court with evidence of a down payment." *Id.* This exception aligns with the policy underlying the statute of frauds, as partial payment is "a sufficiently reliable indicator

that a contract does exist." *Id.*; *see also Beecher's Auto Salvage v. Conservit, Inc.*, Civ. No. 2047-MDA-2014, 2015 WL 6604009, at *3 (Pa. Super. Ct. Oct. 29, 2015) ("Partial payment is a reliable indicator of the existence of a contract and sufficient to remove the bar of the statute of frauds.").

The Complaint alleges the existence of a down payment—the payment of $100,000 on November 11th—which plausibly shows the contract's existence. Rinsch would not have wired the funds to Calderwood if he did not want to manifest an intent to be bound by their agreement. Rinsch argues the partial payment exception only applies to cases where the agreement is "valid in other respects"—i.e., where the only issue is the absence of a writing—and is inapplicable here because the agreement did not have other required terms. Def.'s Reply 2, ECF No. 5 (quoting 13 Pa. Cons. Stat. § 2201(c)). However, by the time the second $100,000 was transferred on November 11, the October 6 price list had defined the key terms of the agreement.[1] The $100,000 payment plausibly suggests Rinsch's intent to purchase the items on the list, rendering the agreement "valid in other respects." 13 Pa. Cons. Stat. § 2201(c). This partial payment takes the alleged contract out of the ambit of the statute of frauds. *See Moss v. Aaron's, Inc.*, Civ. No. 14-3753, 2015 WL 2069274, at *3 (E.D. Pa. May 5, 2015) (holding that partial payment, "if proven at trial, would take the contract outside the statute of frauds"). For this reason, the Court will deny Rinsch's motion to dismiss Count II.

In the alternative, Rinsch brings a claim for promissory estoppel. Promissory estoppel may be asserted as a valid alternative theory of relief to a breach of contract claim. *Cornell Co., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 266 n.19 (E.D. Pa. 2007). In Pennsylvania, the elements of promissory estoppel are: "(1) the promisor makes a promise that he reasonably expects

---

[1] Even if the price list was not incorporated into the text message so as to satisfy the statute of frauds, its existence supports Calderwood's claim of partial payment.

to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51 (3d Cir. 2005) (quoting *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990)). Calderwood alleges he relied to his detriment on Rinsch's promise to buy the Adnet pieces, such that he incurred "significant storage expenses" and forewent the sale of the items to other customers. Compl. ¶ 66. Because Rinsch's communications constituted an implied but sufficiently clear promise to purchase the artwork, the Complaint states a plausible claim for promissory estoppel.

A promise that could reasonably be expected to induce action or forbearance must be clear; a "'broad or vague implied promise' will not suffice." *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007) (quoting *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)). This is so because it is not reasonable to rely on an unclear promise. *See KSM Assoc., Inc. v. ACS State Healthcare, LLC*, Civ. No. 05-4118, 2006 WL 1308267, at *2 (E.D. Pa. May 10, 2006). "Mere expression[s] of intention, hope, desire, or opinion, which show[] no real commitment, cannot be expected to induce reliance." *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 634 (3d Cir. 2013) (alteration in original) (internal citation omitted).

In Pennsylvania, an estoppel claim "need not rely on an express promise." *Dansko Holdings, Inc. v. Benefit Tr. Co.*, 991 F.3d 494, 499 (3d Cir. 2021). The Third Circuit recently noted that Pennsylvania has adopted the Restatement view of promissory estoppel, and that this approach allows for reliance on an implied promise. *Id.* (quoting Restatement (Second) of Contracts § 90). Further, while the Supreme Court of Pennsylvania has never addressed the issue directly, the Third Circuit cited dicta from many lower state courts, which have said that "misleading words, conduct, or silence" may constitute a promise that can support a claim of

estoppel. *Id.* (quotation marks and citation omitted) (citing cases).

While an express promise is not necessary, an implied promise must still be "narrow and specific enough" to be reasonably relied upon. *Id.* at 500. For example, in *Ankerstjerne v. Schlumberger, Ltd.*, the court found the statements "it was ridiculous" that the plaintiff had not been compensated and the defendant "would get it taken care of" were too vague to support a claim of promissory estoppel. 155 F. App'x at 51. These promises failed to "indicate[] how much the plaintiff would be paid, by whom he would be paid, how payment was to be calculated, or when the plaintiff would be paid." *Id.* Similarly, in *Burton Imaging Grp. v. Toys "R" Us, Inc.*, the statement "we're going to move ahead with you as long as everything that you're doing passes the [test]" was "insufficient to qualify as a promise for a claim of detrimental reliance because it [did] not express the intent of the parties with reasonable certainty." 502 F. Supp. 2d at 439.

Calderwood alleges he relied on the following statements by Rinsch: "in the end I know I will be the buyer of yours," "I'll be buying it," and "besides these here, I'll take all the Adnet." Compl. Ex. D at 23, 33, 37, ECF No. 1-1. He also claims other activity induced his reliance, including Rinsch's multiple requests for measurements and his payment of $200,000 after receiving a price list. *Id.* at ¶¶ 22-33. These examples are sufficient to plausibly show a promise made by Rinsch on which Calderwood reasonably relied. Unlike the defendant in *Ankerstjerne*, Rinsch knew how much he would be charged and who he would be paying. And unlike the defendant in *Burton*, Rinsch's statements "I will be the buyer" and "I'll be buying it" express his intent to purchase the items with "reasonable certainty." 502 F. Supp. 2d at 439. Rinsch mischaracterizes his communications as failing to express key terms like price (he had seen the price list), a complete listing of furniture items to be purchased (everything on the list minus the three he identified), or the condition in which the items were to be delivered (restored, refinished,

9

and reupholstered). *See* Def.'s Reply Supp. Mot. Dismiss 5, ECF No. 5. Based on the allegations in the Complaint, Rinsch's promise was clear enough.

Rinsch further argues Calderwood has failed to plead reasonable reliance. Def.'s Mem. Supp. Mot. Dismiss 10, ECF No. 3-1. Calderwood alleges he reasonably relied to his detriment on Rinsch's promises by withholding items for sale to others. Compl. ¶ 66. Rinsch replies that a "mere allegation" of removal of items from the website is insufficient as a matter of law because "'benefit of the bargain' or 'lost opportunity' damages are unavailable under Pennsylvania law based on a promissory estoppel claim." Def.'s Mem. Supp. Mot. Dismiss 10, ECF No. 3-1.

This characterization paints with too broad a brush. The authority Rinsch cites, *Landan v. Wal-Mart Real Estate Business Trust*, stands for the proposition that in a case "where the *Statute of Frauds would require a signed agreement in writing*, . . . 'benefit of the bargain' and 'lost opportunity' damages are unavailable." Civ. No. 12-926, 2016 WL 5253329, at *8 (W.D. Pa. Sept. 22, 2016) (emphasis added); *see also Linsker v. Savings of Am.*, 710 F. Supp. 598, 600 (E.D. Pa. 1989) ("[I]t is undisputed that the remedy for a breach of an alleged contract, where the contract is subject to the Statute of Frauds and not supported by a sufficient writing, is limited to reliance damages."). Because the Complaint pleads sufficient facts to support the plausible inference that Calderwood's breach of contract claim falls outside the bounds of the statute of frauds due to Rinsch's partial payment, *Landan* is inapposite.

Further discussion of what remedies are available for promissory estoppel claims is premature. Calderwood alleges Rinsch's promise "induced action or forbearance": taking the items off the website and forgoing sale to others. *Ankerstjerne*, 155 F. App'x at 51. This plausibly shows an "injustice" that requires relief. At the motion to dismiss stage, Calderwood has alleged sufficient facts to support a promissory estoppel claim.

Rinsch's Motion to Dismiss will be granted as to the declaratory relief claim, but the balance will be denied.

An appropriate Order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.