# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY D. CALDERWOOD<br>D/B/A CALDERWOOD GALLERY<br>242 GEIGER ROAD<br>PHILADELPHIA, PA 19115,<br><br>                    *Plaintiff*,<br><br>            v.<br><br>CARL ERIK RINSCH<br>8657 METZ PLACE<br>LOS ANGELES, CA 90069,<br><br>                    *Defendant*. | Case No. 2:22-02847 |

## DEFENDANT CARL ERIK RINSCH'S
## FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Carl Erik Rinsch ("Mr. Rinsch"), by and through his counsel, hereby requests that Plaintiff Gary D. Calderwood ("Plaintiff") produce the below-identified documents in Plaintiff's possession, custody, or control. Such service should be made to Eric Kraeutler, Esq., attorney for Mr. Rinsch, at the offices of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103.   In responding to these Requests for Production, the following instructions and definitions shall apply:

## DEFINITIONS

A.     "Document" or "Documents" are used herein in their broadest sense, and means all tangible items, and all writings, drawings, graphs, charts, photographs, sounds recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  This definition includes originals, copies, or any non-identical copy or draft version, and

includes native file formats without alteration or deletion of any associated information, *e.g.*, metadata, regardless of origin or location.

B.      "Person" and "persons" as used herein means and includes, without limiting the generality of its meaning, any natural or individual person, corporation, firm, partnership, association, governmental body, agency or subdivision, committee, commission, or other organization or entity.

C.      References to any person, entity or party herein includes his, her, or its agents, attorneys, employees, officers, directors, or others acting on behalf of said person, entity, or party.

D.      "Communication" shall mean any manner or means of disclosure, transfer, or exchange, and any disclosure, transfer or exchange of information whether oral or written, or whether face-to-face, by telephone, mail, e-mail, direct computer transfer, or personal delivery.

E.      "Concerning," "relate to," "refer to," and "pertaining to" are intended to encompass any and all information and documents relating to, referring to, alluding to, responding to, relating to, connected with, commenting on, in respect of, about, regarding, discussing, summarizing, showing, describing, reflecting, analyzing, constituting, or in any way relevant to the underlying facts of the specified subject of the particular Request.

F.      "Complaint" and "this Action" shall mean the Complaint filed by the Plaintiff against Mr. Rinsch in the above-entitled and numbered case.

G.      "Plaintiff" shall mean Gary D. Calderwood, his attorneys, agents, representatives and all other persons acting or purporting to act on behalf of Gary D. Calderwood.

H.      "You" and "your" shall refer to Gary D. Calderwood, individually and doing business as "Calderwood Gallery," unless otherwise noted.

I.      "Defendant" shall refer to Carl Erik Rinsch, unless otherwise noted.

## INSTRUCTIONS

A.     Each Request is to be answered separately and specifically, and documents responsive to each request for production shall be identified and produced by reference to the request number to which such documents are responsive.  No answer is to be left blank.  If the answer to a Request or subparagraph of a Request is "none" or "unknown," such statement must be written in the answer.  If the answer to the entire question is not known, so state and answer the part known.  If an exact date is not known, state the closest approximate date.

B.     In responding to these Requests, produce all documents that are available to you, including documents in the possession of your attorneys, investigators or experts, and not merely documents in your own personal possession.  If you or any of your agents, including your attorney, are aware of the existence of any document within the scope of these Requests that is not within the custody, possession or control of you or your agents, please identify any such document in a written response and provide information about who has possession, custody or control over the document.

C.     When a document request calls for documents or facts that relate to a claim or contention, produce documents that are inconsistent with as well as those that support such claim or contention.

D.     If you object to any part of any Request, you must answer all parts of that Request to which you do not object, and state the specific bases for your objection to any part to which you do object, describe generally the document that is withheld and set forth the facts upon which you rely as the basis for each such objection.

E.    In the event that you claim that a Request is overly broad or unduly burdensome, you should respond to that portion of the Request which is unobjectionable and specifically identify the manner in which the Request is allegedly overly broad or burdensome.

F.    If you claim that an answer, in whole or in part, to any Request or part thereof is privileged or otherwise protected from discovery, you must identify such information by subject matter and state with particularity the nature and basis of its claim of privilege or other reason that the information is protected from discovery.

G.    In following these instructions, the singular includes the plural, and vice versa; the masculine includes the feminine and neuter genders, and vice versa; the past tense includes the present tense where the clear meaning is not distorted by a change of tense.

H.    The conjunctions "and" and "or" shall not be interpreted conjunctively and shall not be interpreted disjunctively to exclude any information otherwise within the scope of a request.

I.    These Requests are deemed continuing in nature and call for prompt supplemental production whenever you receive or discover additional information covered by these Requests. You are hereby notified of and referred to your ongoing duty to promptly supplement your responses to these Requests should you obtain information upon the basis of which you know a prior response was incorrect or incomplete when made, or that a response, though correct and complete when made, is no longer true and complete.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**    Produce all Documents upon which You rely to allege a contractual agreement between You and Mr. Rinsch.

**REQUEST NO. 2:**    Produce all Documents and Communications that refer or relate to Your contractual obligations and responsibilities under any contractual agreement between You and Mr. Rinsch.

**REQUEST NO. 3:**    Produce all Documents that refer or relate to, or otherwise evidence, Communications between Plaintiff and Mr. Rinsch, or between Plaintiff and any other person or entity related to the furniture items under discussion.

**REQUEST NO. 4:**    Produce all Documents and Communications that refer or relate to Your acquisition of the furniture items under discussion, including but not limited to amounts paid for the furniture, the condition of the furniture upon Your receipt, the identity of the seller(s) of the furniture, and the terms of sale.

**REQUEST NO. 5:**    Produce all Documents and Communications that refer or relate to the damages You claim to have suffered and seek in this Action.

**REQUEST NO. 6:**    Produce all Documents and Communications which support Your allegation in paragraph 66 of the Complaint that "Plaintiff relied on … promises by Defendant to his detriment by foregoing the sale of Jacques Adnet works to other customers when he removed these items from his website and considered them sold to Defendant."

**REQUEST NO. 7:**    Produce all Documents and Communications which support Your allegation in paragraph 67 of the Complaint that "Plaintiff has also incurred significant storage expenses in connection with the anticipated sale of the Jacques Adnet items."

**<u>REQUEST NO. 8:</u>**    Produce all Documents and Communications that refer or relate to shipping arrangements, including alleged shipping costs, to transport the furniture items under discussion to Mr. Rinsch.

**<u>REQUEST NO. 9:</u>**    Produce all Documents and Communications that refer or relate to the reliance damages You claim to have suffered and seek in this Action, including but not limited to any shipping or storage costs relating to the furniture items under discussion.

**<u>REQUEST NO. 10:</u>**    Produce all Documents and Communications that refer or relate to Your efforts to mitigate the damages You claim to have suffered and seek in this Action.

**<u>REQUEST NO. 11:</u>**    Produce all Documents that refer or relate to, or otherwise evidence, Communications between You and Mr. Rinsch concerning the allegations in your Complaint.

**<u>REQUEST NO. 12:</u>**    Produce all Documents and Communications that refer or relate to, or otherwise evidence, any conversation or communication between You and any person regarding this Action, Your claims or beliefs that Mr. Rinsch acted unlawfully or illegally, or any of the factual bases of Your case against Mr. Rinsch, as well as all documents that You intend to identify and/or introduce in the trial of the above-captioned matter.

**<u>REQUEST NO. 13:</u>**    Produce all Documents and Communications that refer or relate to any expert retained or consulted by you in connection with this litigation.

Dated:  February 13, 2023

Respectfully Submitted,

*/s/ Eric Kraeutler*
Eric Kraeutler
Julian C. Williams
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001
eric.kraeutler@morganlewis.com
julian.williams@morganlewis.com

*Counsel for Defendant Carl Erik Rinsch*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served upon all counsel of record via email this 13th day of February, 2023.


 */s/ Julian Williams*
Julian Williams

# **<u>EXHIBIT 2</u>**

**ZARWIN BAUM DEVITO KAPLAN**
**SCHAER & TODDY, P.C.**
Anthony R. Twardowski, Esquire
John P. McAvoy, Esquire
One Commerce Square
2005 Market Street | 16th Floor
Philadelphia, Pennsylvania 19103
P: (267) 273-7500
F: (215) 569-1606
E: artwardowski@zarwin.com | jmcavoy@zarwin.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY D. CALDERWOOD, | : | CIVIL ACTION |
| D/B/A CALDERWOOD GALLERY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:22-cv-02847 |
| | : | |
| CARL ERIK RINSCH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OBJECTIONS AND ANSWERS OF PLAINTIFF GARY D. CALDERWOOD D/B/A**
**CALDERWOOD GALLERY TO DEFENDANT CARL ERIK RINSCH'S FIRST SET OF**
**REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

Plaintiff Gary D. Calderwood d/b/a "Calderwood Gallery" (hereinafter, "Plaintiff"), by and
through his attorneys, Zarwin Baum DeVito Kaplan Schaer & Toddy, P.C., hereby objects to and
answers Defendant Carl Erik Rinsch's First Set of Requests for the Production of Documents as
follows:

**GENERAL OBJECTIONS**

The general objections listed below are considered applicable to and are incorporated into
each and every response by Plaintiff to the Document Requests set forth in Plaintiff's First
Request for the Production of Documents and each response is made without waiving any of the
general objections. The assertion of any one of these general objections in response to individual

Document Requests shall not be considered a waiver of the remaining general objections. Plaintiff objects to these Document Requests to the extent they seek information not in Plaintiff's possession, custody, or control.

1.      Plaintiff objects to these Document Requests to the extent they seek documents and information protected by the work-product doctrine and the attorney-client privilege.

2.      Plaintiff objects to these Document Requests to the extent they seek information prepared in anticipation of litigation or after the commencement of this litigation.

3.      Plaintiff objects to these Document Requests to the extent they seek legal opinions or conclusions.

4.      Plaintiff objects to these Document Requests to the extent they seek documents or information beyond the scope of information which Plaintiff is required to provide pursuant to the applicable rules of civil procedure and evidence.

5.      Plaintiff objects to these Document Requests to the extent they are overly broad, unduly burdensome, or impose an unreasonable expense.

6.      Plaintiff objects object to these Document Requests to the extent they are vague and ambiguous.

8.      Plaintiff objects to these Document Requests to the extent they seek documents or information which are not relevant to the lawsuit and which are not reasonably calculated to lead to the discovery of admissible evidence.

9.      Plaintiff objects to these Document Requests to the extent they seek documents or information to which Defendant has equal access.

10.    Plaintiff objects to these Document Requests to the extent they seek "any and all documents" on the grounds that this request is overly broad, unduly burdensome and discovery is ongoing.

11.    Plaintiff objects to these Document Requests to the extent they require the production of publicly available materials, as the burden of locating, identifying, and producing such documents is substantially the same or less for Defendant than it is for Plaintiff.

12.    Plaintiff objects to Defendant's "Definitions" to the extent they seek to impose upon Plaintiff obligations greater than those imposed by the applicable rules of civil procedure and evidence.

Nothing stated herein shall be construed as an admission by Plaintiff respecting the admissibility or relevance of any fact or document or as an admission of the truth or accuracy of any characterization of any document of any kind contained in Defendant's Requests.

These responses are based on the information available at the present time. Plaintiff reserves the right to supplement, amend or correct these Responses in the event that future discovery reveals facts that will justify such supplementation, amendment, or correction.

By making information or documents available in response to Defendant's First Set of Requests for the Production of Documents, Plaintiff does not waive or intend to waive any objections which he may have to Defendant's use of these documents and expressly reserves all questions concerning competency, privilege, relevancy, materiality, and admissibility of all responses and documents produced and their contents; the right to objects to Defendant's use of the Responses and to produce documents in whole or in part, or to the subject matter covered thereby at a later stage of proceedings on any grounds set forth herein above; and, the right to

objects on any and all proper legal grounds at any time to discovery procedures involved in or

relating to the subject matter of the responses or documents made available to the parties.

## OBJECTIONS AND ANSWERS

1.      Produce all Documents upon which You rely to allege a contractual agreement between You and Mr. Rinsch.

> **ANSWER: Plaintiff objects to this Request insofar as it seeks information that is equally accessible to Defendant as Plaintiff. Subject to and without waiver or limitation of the objections contained herein, Plaintiff responds as follows:** *See* **the documents produced with Plaintiff's Initial Disclosures. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

2.      Produce all Documents and Communications that refer or relate to Your contractual obligations and responsibilities under any contractual agreement between You and Mr. Rinsch.

> **ANSWER: Plaintiff objects to this Request insofar as it seeks information that is equally accessible to Defendant as Plaintiff. Subject to and without waiver or limitation of the objections contained herein, Plaintiff responds as follows:** *See* **the documents produced with Plaintiff's Initial Disclosures. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

3.      Produce all Documents that refer or relate to, or otherwise evidence, Communications between Plaintiff and Mr. Rinsch, or between Plaintiff and any other person or entity related to the furniture items under discussion.

> **ANSWER:  Plaintiff objects to this Request on the grounds and to the extent that it is overly broad, vague, and not reasonably specific in time or scope. Subject to and without waiver or limitation of the objections contained herein, Plaintiff responds as follows:** *See* **the documents previously produced with Plaintiff's Initial Disclosures and those attached hereto, which are produced subject to the joint stipulation of confidentiality between the parties. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

4.      Produce all Documents and Communications that refer or relate to Your acquisition of the furniture items under discussion, including but not limited to amounts paid for the furniture, the condition of the furniture upon Your receipt, the identity of the seller(s) of the furniture, and the terms of sale.

> **ANSWER: Plaintiff objects to this Request on the basis that the information requested is not relevant to the subject matter of the claims and defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver or limitation of the**

**objections contained herein, Plaintiff responds as follows: The only documents in Plaintiff's possession responsive to this Request are attached hereto. Plaintiff is producing the attached documents subject to the joint stipulation of confidentiality between the parties. By way of further response, Plaintiff has spent 20+ years acquiring his collection of Jacques Adnet decorative furniture. Plaintiff purchased most of the items at issue in this litigation from various places through the years and did not maintain records for each individual transaction. Plaintiff is, however, able to produce documents related to one piece of Adnet furniture. Specifically, the attached documents pertain to a certain sofa suite that Plaintiff purchased from France for inventory in the normal course of business and subsequently sold to Defendant. Although this is the only piece of Adnet furniture for which Plaintiff has records in his possession, Plaintiff nevertheless reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

5.      Produce all Documents and Communications that refer or relate to the damages You claim to have suffered and seek in this Action.

**ANSWER:  The damages Plaintiff is seeking for each cause of action are set forth in detail in Plaintiff's Complaint. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

6.      Produce all Documents and Communications which support Your allegation in paragraph 66 of the Complaint that "Plaintiff relied on … promises by Defendant to his detriment by foregoing the sale of Jacques Adnet works to other customers when he removed these items from his website and considered them sold to Defendant."

**ANSWER:** *See* **the attached documents.**

7.      Produce all Documents and Communications which support Your allegation in paragraph 67 of the Complaint that "Plaintiff has also incurred significant storage  expenses in connection with the anticipated sale of the Jacques Adnet items."

**ANSWER:** *See* **the attached documents.**

8.      Produce all Documents and Communications that refer or relate to shipping arrangements, including alleged shipping costs, to transport the furniture items under discussion to Mr. Rinsch.

**ANSWER: Plaintiff objects to this Request insofar as it seeks information that is equally accessible to Defendant as Plaintiff. Subject to and without waiver or limitation of the foregoing objections, Plaintiff responds as follows: Except for the underlying text messages and email communications between the parties which have already been produced in this case, no other documents responsive to this Request exist as Defendant never made the necessary shipping arrangements. Plaintiff does not provide shipping.**

9.    Produce all Documents and Communications that refer or relate to the reliance damages You claim to have suffered and seek in this Action, including but not limited to any shipping or storage costs relating to the furniture items under discussion.

**ANSWER:** *See* **the attached documents.**

10.    Produce all Documents and Communications that refer or relate to Your efforts to mitigate the damages You claim to have suffered and seek in this Action.

**ANSWER: Plaintiff objects to the implied or assumed predicate that Plaintiff had either a duty or the opportunity to prevent, reduce, minimize, and/or mitigate any damages and expressly rejects that predicate. Subject to and without waiver or limitation of the foregoing objections, Plaintiff filed this lawsuit so that Defendant would take possession of the furniture he acquired and thereby prevent, reduce, minimize, and/or mitigate further and ongoing damages. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

11.    Produce all Documents that refer or relate to, or otherwise evidence, Communications between You and Mr. Rinsch concerning the allegations in your Complaint.

**ANSWER: Plaintiff objects to this Request insofar as it seeks information that is equally accessible to Defendant as Plaintiff. Subject to and without waiver or limitation of the objections contained herein, Plaintiff responds as follows:** *See* **the documents previously produced with Plaintiff's Initial Disclosures. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

12.    Produce all Documents and Communications You refer or relate to, or otherwise evidence, any conversation or communication between You and any person regarding this Action, Your claims or beliefs that Mr. Rinsch acted unlawfully or illegally, or any of the factual bases of Your case against Mr. Rinsch, as well as all documents that You intend to identify and/or introduce in the trial of the above-captioned matter.

**ANSWER: Plaintiff objects to this Request on the grounds and to the extent that it is duplicative of other requests already made by Defendant. Plaintiff further objects to this Request on the grounds and to the extent that it is overly broad, vague, and not reasonably specific in time, scope, or subject matter. Subject to and without waiver or limitation of the objections contained herein, Plaintiff responds as follows: Plaintiff has yet to determine which documents he intends to introduce at the time of trial. Plaintiff reserves the right to supplement his response to this Request as discovery continues in accordance with the Federal Rules of Civil Procedure.**

13.     Produce all Documents and Communications that refer or relate to any expert retained or consulted by you in connection with this litigation.

**ANSWER:  Plaintiff has not yet determined whom, if anyone, he will call as experts on his behalf at the time of trial. Plaintiff will supplement his answer in accordance with any deadline set forth regarding the disposition of this case.**

**ZARWIN, BAUM, DEVITO, KAPLAN SCHAER & TODDY, P.C.**

Date:   April 5, 2023                    By: _____

ANTHONY R. TWARDOWSKI, ESQ.
JOHN P. McAVOY, ESQ.
*Attorneys for Plaintiff*

## VERIFICATION

I, GARY D. CALDERWOOD, hereby certify that I have reviewed the document production requests and that I have made or caused to be made a good-faith search for documents responsive to the requests. I further certify that as of this date, to the best of my knowledge and information, the production is complete and accurate based on my personal knowledge and/or information provided to me by others. I acknowledge my continuing obligation to make a good faith effort to identify additional documents that are responsive to the request and to promptly serve a supplemental written response and production of such documents, as appropriate, as I become aware of them. I am aware that I will be subject to punishment if any of the answers to Defendant's First Requests for Production of Documents are deemed willfully false.

Dated:    April 5, 2023                    By: _____
                                                GARY D. CALDERWOOD

1stdibs &lt;noreply-mc@1stdibs.com&gt;    Case 2:22-cv-02847-JS    Document 38-2    Filed 07/17/23    Page 19 of 55    Mon, Sep 6, 2021, 9:10 PM

to me

**UPDATE: Do not reply to this email.** Please visit Message Center to respond to this message. This is an automated email from an address that cannot accept replies.

# 1stDIBS

Dashboard        Message Center        Contact 1stDibs

---

Carl sent you a message about Jacques Adnet Pair of Modernist Club Chairs.

"Please send invoice and quote for all other adnet to (email hidden) thanks and god bless

Carl Erik Rinsch"

---

**Terms of Service Reminder**
Sharing contact information is not allowed. All transactions must be completed on 1stDibs. Learn More

**REPLY WITH OFFER**

**REPLY TO MESSAGE**



Jacques Adnet Pair of Modernist Club Chairs

| | |
|---|---|
| List Price: | $22,500.00 |
| Reference # | #1401 |
| 1stDibs Reference # | LU843718457312 |

Calderwood001



# BORDEREAU D'ACHAT

**CALDERWOOD Gary**

242 Geiger Road
Philadelphie, PA 19115, US

usa

Vente du  23/10/2021

Acheteur n°          978 / 9518

modpop70@gmail.com
(215) 327-8664

Liste des lots

| 415 | Travail des années 1940 | |
|---|---|---|
| 1986-115 | Important salon comprenant un canapé et deux fauteuils tapissés de velours parme | 2 700 |
| | 197 x 95 x 74 cm (2) 95 x 86 x 74 cm*Vendu sur désignation | |

|  |  |
|---|---|
| Total enchères | 2 700,00 |
| frais liveauctioneers 5% | 135,00 |
| Honoraires 25 % TTC | 675,00 |
| Total frais | 810,00 |

TVA sur la marge bénéficiaire:
Article 297 A du Code Général des Impôts
Directive communautaire 2006/112/CE

| TOTAL A REGLER en Euros | **3 510,00** |
|---|---|

Mode de règlement :

OA

SARL CARVAJAL SVV – 33 Boulevard Maréchal Foch 06600 Antibes
Tél : 04 92 93 16 35 – Fax : 04 92 93 17 36 - e-mail : carvajalsvv@orange.fr
Société de ventes volontaires de meubles aux enchères publiques Agrément n°2010-
SARL au capital de 10 000 euros - 521 312 629 R.C.S. Antibes

1215978

Calderwood002

# Travail des années 1940 Important salon comprenant

liveauctioneers.com/item/114580481_travail-des-annees-1940-important-salon-comprenant







## Item Details

Description

Travail des années 1940
Important salon comprenant un canapé et deux fauteuils tapissés de velours parme
197 x 95 x 74 cm
(2) 95 x 86 x 74 cm
*Vendu sur désignation

Buyer's Premium

- 30% up to €500,000.00
- 30% above €500,000.00

Estimate €500 - €600

Oct 23, 2021
Sold for €2,700

Calderwood003

Bidder

Bid

Internet Bid

€2,700.00

Competing Bid

€2,500.00

Internet Bid

€2,400.00

Show Remaining Bid History

Shipping, Payment & Auction Policies



Ships from Antibes, FRANCE, France
CARVAJALAntibes, France
37 Reviews ▶
1,388 Followers





Calderwood005



Calderwood006

4/4

# Conversation with **Julia**  `TRADE`  💎 PLATINUM

US  |  Member Since 2020

✓ **Validated Payment**   ✓ **Purchased on 1stDibs**   ✓ Other conversations ( 5 ) ⌄   ✓ Recent Interests ⌄



**Jacques Adnet Pair of Modernist Club Chairs**

**Item Ref**: LU843718457312

---

Friday, October 8, 2021

**1stDibs Conversation Reminders and Support**  •  4:07 PM
- Always complete your transactions through 1stDibs to to ensure you're entitled to seller protection.
- We expect you'll have a great conversation with the buyer but if you don't, please let us know.

 **Julia**  •  4:07 PM

Hi,

Can we please place this on hold for a presentation on Thursday 10.14?

Thank You

 **Calderwood Gallery**  •  4:56 PM  I Response Time: 49 minutes ✓

Dear Julia,
Thank you for your interest. I am so sorry but these chairs are on hold for another presentation! We have other club chairs posted - if any of those are of interest do please let me know! Janet Calderwood

Sunday, October 10, 2021

 **Calderwood Gallery**  •  1:48 PM

Dear Julia, We have just had confirmaiton that the Adnet club chairs are sold. We also have a pair by Louis Sognot on 1stDibs which are a very similar aesthetic and also scale. Might you consider these? Janet Calderwood
Here is the number:
Item Reference
LU843719615502

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY D. CALDERWOOD, | : | CIVIL ACTION |
| D/B/A CALDERWOOD GALLERY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:22-cv-02847 |
| | : | |
| CARL ERIK RINSCH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, JOHN P. McAVOY, ESQUIRE, certify that the foregoing Objections and Answers to

Defendant's First Request for the Production of Documents was served upon counsel of record for

Defendant via email as set forth below on the 6th day of April 2023:

> Eric Kraeutler, Esq.
> Julian C. Williams, Esq.
> MORGAN, LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, PA 19103-2921
> *Attorneys for Defendant*

**ZARWIN, BAUM, DEVITO, KAPLAN,
SCHAER & TODDY, P.C.**

By: _____
John P. McAvoy, Esquire

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY D. CALDERWOOD, | : | CIVIL ACTION |
| D/B/A CALDERWOOD GALLERY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:22-cv-02847 |
| | : | |
| CARL ERIK RINSCH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## INITIAL DISCLOSURES OF PLAINTIFF GARY D. CALDERWOOD

In accordance with Federal Rule of Civil Procedure 26(a)(1), Plaintiff Gary D. Calderwood

d/b/a "Calderwood Gallery" ("Plaintiff" or "Calderwood"), by and through his attorneys, Zarwin,

Baum, DeVito, Kaplan, Schaer & Toddy, P.C., hereby makes the following self-executing

disclosures. Plaintiff reserves the right to supplement and/or amend these disclosures.

### A. **Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)(A)**

1. Gary D. Calderwood, Plaintiff
   c/o Anthony R. Twardowski, Esquire and John P. McAvoy, Esquire
   Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
   One Commerce Square
   2005 Market Street | 16th Floor
   Philadelphia, Pennsylvania 19103-7042

In addition to the specific information contained in his Complaint, Plaintiff has knowledge

of, without limitation, Defendant's breach of contract; and Plaintiff's damages resulting from

Defendant's actions and/or inactions.

2. Janet Calderwood, Plaintiff's Spouse
   c/o Anthony R. Twardowski, Esquire and John P. McAvoy, Esquire
   Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
   One Commerce Square
   2005 Market Street | 16th Floor
   Philadelphia, Pennsylvania 19103-7042

Janet Calderwood ("Mrs. Calderwood") is Plaintiff's spouse. Mrs. Calderwood is also a co-owner and employee of Calderwood Gallery. She may have information based on her first-hand observations (and not by any waiver of spousal communication privilege) of Defendant's breach of contract and Plaintiff's damages.

3.  Erik Carl Rinsch, Defendant
    c/o Eric Kraeutler, Esquire
    Morgan, Lewis & Bockius, LLP
    1701 Market Street
    Philadelphia, Pennsylvania 19103

Defendant has knowledge of, without limitation, the specific information contained in the Complaint, generally, including his breach of contract and other actions and inactions, more specifically.

4.  Any individual(s) identified by Defendant

Plaintiff reserves the right to rely upon any additional witness who has first-hand knowledge of the subject matter of this action and who is identified either by Defendant's Rule 26(a)(1) Initial Disclosures or through the course of discovery.

**B.  Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)(B)**

The following documents or tangible things are in the possession, custody, or control of Plaintiff, and may be used by Plaintiff to support his claims, unless solely for impeachment. The documents identified in accordance with this disclosure will not include documents protected by the attorney-client or work product privileges. Plaintiff reserves the right to supplement this disclosure as additional information becomes available through discovery.

1.  The documents attached to Plaintiff's Complaint as Exhibit A;
2.  The documents attached to Plaintiff's Complaint as Exhibit B;
3.  The documents attached to Plaintiff's Complaint as Exhibit C;
4.  The documents attached to Plaintiff's Complaint as Exhibit D;
5.  The documents attached to Plaintiff's Complaint as Exhibit E;

6.  The documents attached to Plaintiff's Complaint as Exhibit F;

7.  The documents attached to Plaintiff's Complaint as Exhibit G;

8.  The documents attached to Plaintiff's Complaint as Exhibit H;

9.  The documents attached to Plaintiff's Complaint as Exhibit I;

10. The documents attached to Plaintiff's Complaint as Exhibit J;

11. The documents attached to Plaintiff's Complaint as Exhibit K;

12. The documents attached to Plaintiff's Complaint as Exhibit L;

13. The documents attached to Plaintiff's Complaint as Exhibit M;

14. The documents attached to Plaintiff's Complaint as Exhibit N;

15. The documents attached to Plaintiff's Complaint as Exhibit O

16. The documents attached to Plaintiff's Complaint as Exhibit P;

17. The documents attached to Plaintiff's Complaint as Exhibit Q;

18. The documents attached to Plaintiff's Complaint as Exhibit R;

19. The documents attached to Plaintiff's Complaint as Exhibit S;

20. Documents related to Plaintiff's damages; and

21. Any and all documents identified in the Initial Disclosures of Defendant.

## C.  Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)(C)

Plaintiff seeks all damages available to him under the law, including money damages in the amount due and owing under the contract, plus interest, costs, and any other relief the court deems just and proper. Plaintiff reserves his right to supplement and/or amend his disclosures.

## D.  Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)(D)

Not applicable.

3

**ZARWIN, BAUM, DEVITO, KAPLAN,**
**SCHAER & TODDY, P.C.**

Date:  February 8, 2023                    By:

Anthony R. Twardowski, Esquire
John P. McAvoy, Esquire
One Commerce Square
2005 Market Street | 16th Floor
Philadelphia, Pennsylvania 19103-7042
*Attorneys for Plaintiff, Gary D. Calderwood*
*d/b/a Calderwood Gallery*

4

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY D. CALDERWOOD, | : | CIVIL ACTION |
| D/B/A CALDERWOOD GALLERY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:22-cv-02847 |
| | : | |
| CARL ERIK RINSCH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### CERTIFICATE OF SERVICE

I, JOHN P. McAVOY, ESQUIRE, certify that the foregoing Initial Disclosures, in accordance with Fed. R. Civ. P. 26(a)(1)(A), were served upon counsel of record for Defendant Erik Carl Rinsch via electronic mail as set forth below on this 8th day of February 2023:

> Eric Kraeutler, Esquire
> Morgan, Lewis & Bockius, LLP
> 1701 Market Street
> Philadelphia, Pennsylvania 19103
> Email: eric.kraeutler@morganlewis.com
> *Attorney for Defendant,*
> *Carl Erik Rinsch*
>
> Julian C. Williams, Esquire
> Morgan, Lewis & Bockius, LLP
> 1701 Market Street
> Philadelphia, Pennsylvania 19103
> Email: jullian.williams@morganlewis.com
> *Attorney for Defendant,*
> *Carl Erik Rinsch*

**ZARWIN, BAUM, DEVITO, KAPLAN,
SCHAER & TODDY, P.C.**

By: _____
     John P. McAvoy, Esquire

# **EXHIBIT 4**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY D. CALDERWOOD, | : | CIVIL ACTION |
| D/B/A CALDERWOOD GALLERY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:22-cv-02847 |
| | : | |
| CARL ERIK RINSCH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### CERTIFICATION OF COMPLETE DOCUMENT PRODUCTION

I, GARY D. CALDERWOOD, declare and state as follows:

1.  I am the owner of Calderwood Gallery and the plaintiff in the above-captioned action.

2.  I have reviewed Defendant Carl Erik Rinsch's First Request for the Production of Documents in this matter.

3.  I have produced all documents in my possession responsive to Defendant Carl Erik Rinsch's First Request for the Production of Documents.

4.  I certify that Plaintiff's document production is complete to the best of my knowledge, information, and belief.

5.  I understand that the statements made herein are subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Dated: April 14, 2023          By:  _DocuSigned by:_
                                    *Gary D. Calderwood*
                                    4F2131CD6AСА497...
                                    GARY D. CALDERWOOD

# EXHIBIT 5

web.archive.org /web/20210813223417/https://www.1stdibs.com/about/user-agreement/

# About Us



User Agreement

User Agreement & Conditions of Sale

1stdibs.com and its related sites, products, services, mobile applications, and tools (individually and collectively, the "Site") are owned and operated by 1stdibs.com, Inc., a Delaware (USA) corporation ("1stdibs," "Us" or "We"). These terms and conditions ("Terms") govern your ("User" or "You") use of and conduct on the Site. Should you purchase any item(s) on the Site, the conditions of sale beginning, principally, at Clause 6 (referred to as the "Conditions of Sale") shall govern your transaction as prospective purchaser and buyer (collectively, "Buyer").

1. The Site.

The Site provides an online marketplace for appropriately qualified sellers ("Seller") to offer to sell goods ("Items") to prospective purchasers. In the event of a sale of any Item, the sale is made directly between the Buyer and the Seller, and is governed by this User Agreement and the Conditions of Sale.

2. Terms of Use.

1stdibs provides Users with access to and use of the Site subject to your compliance with these Terms and the 1stdibs' privacy policy, available at: https://www.1stdibs.com/about/privacy-policy/. Your use of the Site constitutes your express agreement to these Terms and our privacy policy. If you do not agree to these Terms or our privacy policy, you may not access or use the Site.

3. The Role of 1stdibs.

Calderwood008

(a) The role of 1stdibs is expressly limited to making the Site available and maintaining the Site for Sellers, Buyers, and Users. 1stdibs is an intermediary and not an agent or fiduciary for any Seller, Buyer or User for any purpose. 1stdibs is not responsible for the actual sale of any Item and does not control the information provided by Sellers, Buyers, or Users, nor their acts or omissions. 1stdibs is independent from the Seller, Buyer and User, and no partnership, joint venture, employee-employer or franchiser-franchisee relationship is intended or created by the operation of this Site by 1stdibs.

(b) 1stdibs may, but is not obligated to, provide intermediary services between the Buyer and Seller in connection with customer service or dispute resolution matters. In the event 1stdibs elects in its sole discretion to provide intermediary services, then the decision of 1stdibs is final and binding on all parties and cannot be appealed, challenged or reversed.

4. Registration and Account Access.

(a) Registration may be required in order to use the Site. Registrants are required to provide certain information such as a valid email address, and to select a password to be used to create and access their accounts. This password and other registration details should be kept safe and not shared with anyone. Registrants may voluntarily provide additional information in the registration process to personalize their accounts. Registrants may access their accounts to view their profile information as well as transaction information by clicking the icon on the home page of the Site after logging in.

(b) Users may cancel their registration and account at any time. For your security, requests to terminate accounts must originate from the registered email account with 1stdibs addressed to support@1stdibs.com. Under no circumstances will a cancellation request received via the phone or otherwise be accepted.

5. Eligibility to Use the Site.

Minors are not permitted to use the Site. Users must be 18 years of age or older to use this Site. This Site is not directed at children under the age of 13 and does not knowingly collect information from such minor children.

CONDITIONS OF SALE

6. Relationship of the Parties.

(a) The Seller is responsible for accurately describing and pricing the Items it is offering for sale and for delivering the Items to the Buyer in accordance with the arrangements made between Buyer and Seller, including transfer of title and payment of sales tax or VAT or import/export duty to the appropriate authority.

(b) The Buyer is solely responsible for determining the value, condition and authenticity of the Items being purchased, to pay the purchase price to the Seller including any sales tax, VAT or import/export duties, and to arrange for shipping of the Items purchased.

(c) The role of 1stdibs is expressly limited as set forth in Clause 3 above. 1stdibs relies on the Sellers for such information and is not responsible in any way for the description or pricing of Items on the Site provided

by the Seller. 1stdibs is not responsible for the delivery or transfer of legal ownership of Items from a Seller to you. We are not responsible for the delivery of payment from you to the Seller unless we explicitly agree to be.

7. Items Available on the Site.

(a) All Items displayed on the Site are offered for sale subject to availability. Some Items displayed on the Site are unique and are offered by Sellers that usually have retail opportunities for the sale of the Item independent from 1stdibs, and therefore some Items may no longer be available.

(b) The Site is designed to provide the Buyer access to Items as the Sellers present them. The Buyer is aware that unless stated otherwise, Items are neither new nor in 'perfect' condition. An Item may require touch-up or repairs prior to use and that the available information about these Items may be limited. Accordingly, 1stdibs does not verify any information provided by the Seller (or its representative selling an Item) and 1stdibs makes no representations or warranties with respect to the Seller, the Item or the information related to the Item.

8. The Sale Process.

(a) When a Buyer identifies an Item for purchase, the Buyer may make an offer to purchase the Item ("Offer") directly through the Site's checkout page, or by contacting 1stdibs through any method listed on the Site (including by telephone). When making an Offer, the Buyer shall submit valid payment information to 1stdibs for payment of the Total Purchase Price. The "Total Purchase Price" is defined as the price agreed to on the Site between Buyer and Seller and includes: (i) the final, agreed upon price of the Item (the "Purchase Price"); (ii) any applicable shipping fees; and (iii) any sales tax, use tax, VAT, Internet sales tax and/or any other taxes or levies that the Seller is required to collect from the Buyer under applicable law at the time of sale. By making an Offer, the Buyer irrevocably agrees to pay the Total Purchase Price and, unless a counter-offer is made, the Seller agrees to sell the Item for the Total Purchase Price to the Buyer.

(b) If a Seller has indicated that the price of an Item is negotiable, then the Buyer may make an Offer through the Site to the Seller to purchase the Item at an alternative price selected by the Buyer or may inquire by using the telephone number displayed on the Site. Such calls will be operated and recorded by 1stdibs to log transactions, and for training and quality assurance purposes.

(c) An Offer may not be canceled or revoked by a Buyer unless the Offer was made prior to the Total Purchase Price being fully confirmed by the Buyer and Seller e.g. because the shipping fees were not fully known at the time of placing the Offer (subject to any statutory rights that a Buyer may have). The Seller, at its sole discretion, may: (i) accept the Offer; (ii) decline the Offer; or (iii) make a counter-offer to the Buyer ("Counter-Offer"). By making a Counter-Offer, the Seller agrees to sell the Item to the Buyer at the Counter-Offer price and represents that the Item is available for immediate sale as long as the Buyer agrees to the Counter-Offer, and subject to any additional conditions contained in the Counter-Offer. Either the Buyer, the Seller, or 1stdibs may place a time limit on the effectiveness of the Offer and each party acknowledges that the Offer will lapse at the end of the offer period. If the Buyer agrees to pay the Counter-Offer price, then the

Buyer shall acknowledge that acceptance by either confirming the purchase on the "offer status section" page of the Buyer's 1stdibs account, or by confirming acceptance over the telephone.

(d) The sale takes place between the Buyer and the Seller, and a confirmation of sale ("Order Confirmation") is posted to the "offer status section" page of the Buyer's 1stdibs account, once: (i) the Seller has accepted and confirmed the Buyer's Offer; or (ii) the Buyer has acknowledged, accepted and confirmed the Seller's Counter-Offer. At this point, a binding contract between the Seller and the Buyer with respect to the sale and purchase of the Item is created and enforceable.

(e) In certain circumstances, a Buyer will be required to post a "reserve" amount to support an Offer ("Reserve Amount"). This Reserve Amount shall be authorized to 1stdibs by credit card at the time the Offer is made, and shall be credited against the Total Purchase Price due. In the event the Buyer and Seller are unable to agree upon the Total Purchase Price, or other material terms of the transaction, then 1stdibs will credit the Reserve Amount back to Buyer's credit card account.

(f) For custom made orders, a Buyer will be required to post a non-refundable "deposit" amount ("Deposit"). The Deposit shall be paid by credit card or other acceptable payment method upon confirmation of sale. The Deposit will be held by the Seller and shall be credited against the Total Purchase Price.

(g) Notwithstanding anything to the contrary contained herein, in the event of an error by Seller as to availability of the Item, or an error by the Seller or 1stdibs as to acceptance of an Offer or Counter-Offer as the case may be, or any other error on Seller's or 1stdibs' part with respect to a Order Confirmation or the operation of the Site, the Seller and/or 1stdibs reserve the right in their sole and absolute discretion to rescind that Order Confirmation and purchase of the Item without penalty to any party.

(h) Due to the nature of the internet, occasional glitches, service interruptions or mistakes may cause unintended inaccuracies to appear on the Site. 1stdibs has the right to correct any inaccuracies or mistakes, and to void any purchase of an Item that displays an inaccurate price or description once brought to our attention.

9. Offers to Purchase Outside of the Site.

(a) Sellers and Buyers are prohibited from using 1stdibs or the Site to contact each other to make offers to buy or sell and Item outside of the methods provided for by the Site. Sellers and Buyers are also prohibited from using information obtained from the Site to contact each other about buying or selling any Item available for sale on the Site outside of the methods provided for by the Site.

(b) If a Buyer attempts to breach these guidelines, 1stdibs may limit, restrict, or suspend the Buyer from using any feature of Site. The Buyer may also forfeit any special account status and/or discount rate. The Buyer may also be subject to the application of fees and recovery of 1stdibs expenses in policy monitoring and enforcement.

10. Payment for Purchased Items.

Calderwood011

(a) Immediately upon receipt of the Order Confirmation, the Buyer shall remit an amount equal to the full amount (100%) of the Total Purchase Price. In the event Buyer has previously posted a Reserve Amount with 1stdibs for the Item, then the Reserve Amount shall be credited against the Total Purchase Price and Buyer shall remit the remaining balance of the Total Purchase Price.

(b) The Buyer hereby irrevocably authorizes 1stdibs upon Order Confirmation to charge the Buyer's credit card or other payment methods for an amount equal to the Total Purchase Price.

11. Taxes and Duties.

The Buyer is entirely responsible for paying all applicable sales and use taxes, VAT, export and/or import taxes and duties and all transactional taxes or levies related to each Item purchased (collectively, "Taxes"). The Buyer shall pay the Seller such Taxes as the Seller is required to collect, but failure of the Seller to collect the Taxes will not relieve the Buyer's obligation. The Buyer must determine, pay, collect, remit and report to the appropriate taxing authority the correct amount of all export and/or import taxes or duties payable upon export of the Item from its country of origin and import into the United States or any other country. In the event that an exemption applies, it is the Buyer's sole responsibility to establish and/or document any applicable exemption from Taxes.

12. Shipping.

(a) Buyer-arranged shipping. The Buyer is in every instance free to arrange the Buyer's own shipping and may elect to use any shipping company of its choice. The crating/shipping/insurance companies designated by the Buyer are the Buyer's agents and the Buyer will bear all applicable costs and pay such costs directly to the agents. The Buyer may also ask 1stdibs to arrange for shipping of any Item on the Buyer's behalf which may be subject to pre-advertised shipping prices.

(b) Seller-arranged shipping. The Buyer may elect to have the Seller arrange for crating, packaging, shipping and freight insurance. Following the Buyer's request, the Seller shall provide shipping information including the name of the freight carrier, the complete cost of shipment from the Seller to the Buyer's designated receiving address, the cost of any duty or other charges to be paid by the Buyer, the cost of freight insurance and the name of such insurance provider, as well as any costs or fees to be charged by the for crating or packaging the Items for shipment. The Buyer and the Seller shall mutually agree on shipment terms and the Buyer shall prepay all shipment costs.

(c) On occasion, certain Items may be eligible for free shipping as indicated in the Item description. Any offer of free shipping may be limited, and subject to certain exceptions as will be noted at the time of such free shipping offer. In cases where free shipping is available, the remaining terms of this User Agreement and Conditions of Sale remain applicable. 1stdibs reserves the right to cancel or modify any offer for free shipping at any time without notice.

(d) 1stdibs reserves the right to correct or cancel any transaction if an error is made in calculating shipping.

13. Import/Export Restrictions.

Calderwood012

(a) Some Items offered for sale on the Site may require cultural, customs and regulated species permits for export from the country where they are located and/or import into the Buyer's country. Items may also be subject to a right of the country from which they are exported to purchase the Items from the Buyer. Neither the Seller nor 1stdibs makes any representation, gives any warranty or shall have any liability to the Buyer in respect of the requirement for, or the availability, or issuance of valid export or import permits or the existence or exercise of preemption rights to purchase by governmental or regulatory authorities anywhere.

(b) If the listing of any Item on the Site states that the Item requires a special permit, or if such requirement is disclosed after the Order Confirmation but before the shipper picks up the Item, or if the Buyer first learns that an export permit is required after the Item has been picked up by the shipper, and the Seller is unable to obtain the export permit within thirty (30) days after the later of confirmation of the sale or disclosure of the requirement for the export permit, then the Buyer may rescind the sale of such Item by giving written notice to 1stdibs and the Seller within seven (7) business days after expiration of the applicable thirty (30) day period. In no event shall the Buyer be entitled to rescind a sale more than ninety (90) days after the date of the sale.

(c) If the sale is rescinded, the Buyer shall return the Item to the Seller at the Buyer's cost unless otherwise agreed. Upon such return, 1stdibs and/or the Seller shall return to the Buyer the Total Purchase Price. This limited right of rescission is not assignable and belongs solely to the Buyer of record.

14. Transfer of Title/Risk of Loss.

(a) The Seller of each Item offered for sale on the Site represents and warrants that the Seller: (i) is the sole owner of such Item, or is duly authorized by the owner to sell the Item; and (ii) will convey good and marketable title of such Item to the Buyer following payment of the Total Purchase Price for the Item free and clear of any ownership claims by third parties.

(b) In the event the Seller has requested that 1stdibs collect and remit payment of the Total Purchase Price, then the Seller will convey good and marketable title to the Item upon receipt of the Order Confirmation by the Buyer and receipt by 1stdibs of the Total Purchase Price.

(c) In the case of Buyer-arranged shipping, risk of loss and title for such Item passes to the Buyer upon the Seller's delivery of the Item to the carrier selected by the Buyer for shipment or when the Buyer picks up the Item from the Seller.

(d) In the case of Seller-arranged shipping, risk of loss and title for such Item passes to the Buyer upon the Buyer's receipt of the Item.

15. Sales are "As-Is".

(a) All Items displayed on the Site are sold "As-Is", "With All Faults". Neither the Seller nor 1stdibs makes any guarantee, warranty or representation, expressed or implied, to any Buyer with respect to any Item, including without limitation, its condition, merchantability, fitness for a particular purpose, quality, rarity, importance, provenance, designer or creator, exhibitions, literature, historical relevance, or as to whether the Buyer

acquires any reproduction right or other intellectual property right in any Item. No statement anywhere, whether oral or written, shall be deemed any such guarantee, warranty or representation.

(b) Any agreement between the Buyer and the Seller shall not be governed by the U.N. Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.

(c) The provisions of the Commercial Agents Directive (86/653/EC) as implemented in any European jurisdiction (for example, in the UK via the Commercial Agents Regulations 1993) are expressly excluded from these Terms and our agreement. By using the Site, Buyers and Users select and purchase goods marketed by Sellers, solely of their own initiative, placing orders via the Site. You acknowledge that 1stdibs.com has no control over the ultimate price Items are sold at or any sales terms ultimately entered into between a Buyer and a Seller.

16. Expert Review.

If the Buyer is purchasing an Item based in whole or in part on its stated provenance, designer or creator, the Buyer may at its option and at its own cost arrange with the Seller to have Buyer's selected expert review the Item prior to purchase. Selection of the expert is the sole responsibility of the Buyer. Any arrangements for inspection shall be made between the Buyer and Seller. Buyer expressly acknowledges that the Buyer's use and/or reliance on any expert is at the Buyer's own risk and cost.

17. 1stdibs Trade Rewards Program.

(a) As of January 1, 2020, select trade purchasers may be eligible to participate in the 1stdibs Trade Rewards Program ("Trade Rewards Program"). The Trade Rewards Program is only intended for and available to professional interior designers and architects who have been accepted into the 1stdibs Trade Rewards Program by 1stdibs in its sole discretion ("Verified Designers"). The Trade Rewards Program includes a suite of benefits only available to Verified Designers as set forth in the terms and conditions of the 1stdibs Trade Rewards Program, which is hereby incorporated by this reference (the "Trade Program Terms"). By participating in the Trade Rewards Program, you hereby agree to the Trade Program Terms.

(b) By accepting any benefits of and/or any other participation you make in the Trade Rewards Program, you represent and warrant to us that you are a professional interior designer or architect. We reserve the right to seek additional information to verify your qualification for the Trade Rewards Program, and we may in our sole discretion reject any person/entity which fails to meet the qualifications we impose for such Trade Rewards Program (even if they are a professional designer or architect). When you are granted a 1stdibs Trade account, you are automatically part of the Trade Rewards Program and are eligible for such benefits available under the Trade Rewards Program.

(c) 1stdibs reserves the right to update, modify, suspend, or terminate the Trade Rewards Program or Trade Program Terms at any time in its sole discretion and without further notice. You automatically agree to any updates to the Trade Program Terms by continuing to participate in the Trade Rewards Program.

(d) The Trade Rewards Program and the Trade Program Terms do not apply to Sellers, Users, or Buyers who are not Verified Designers.

18. Remedies for Non-payment.

(a) If for any reason the Buyer cancels payment made by credit card or any other means following receipt of the Order Confirmation, or the Buyer otherwise fails to make any payment with respect to the Total Purchase Price ("Default"), then the Buyer shall remain liable to the Seller for the Total Purchase Price in full, as well as any additional costs related to the sale of the Item, including but not limited to applicable taxes, storage and handling fees and any incurred costs or fees associated with collection of any amount due to 1stdibs and/or the Seller including but not limited to legal fees and costs related to currency fluctuations.

(b) Without limitation to any other provision of these Terms, in addition to any other remedies at law or equity, 1stdibs reserves the right, at its election, to retain any and all payments paid by Buyer prior to Default with respect to the Item as liquidated damages, and to cancel the sale of the Item without any further obligation to Buyer.

19. Right of Cancellation. [European Union]

(a) This subsection applies where: (i) the EU Consumer Rights Directive (2011/83/EU) as implemented into national law in the various EU jurisdictions, applies to a consumer based in the European Union ("EU Consumer"); and (ii) none of the express exclusions set forth below apply. Where this subsection applies, the EU Consumer has the right to cancel its order without giving reason within 14 days from the day on which the EU Consumer or its designated recipient receives an Item ("Cancellation Period"). The EU Consumer must inform 1stdibs, or the Seller, of its decision to cancel the order in writing (including by email) within this period. The Seller will refund all payments received from the EU Consumer/1stdibs for the Items purchased and the EU Consumer shall incur no fee as a result of such refund. Any refund may be withheld until the Seller has received the Items back from the EU Consumer. The EU Consumer must send back the Item following the instructions of the Seller (but in all cases the EU Consumer will be given at least fourteen (14) days to return the Item from the date of cancellation), and the EU Consumer will be required to bear the cost of returning any Item to the Seller. The Seller may make a deduction from the refund for loss in value of the Item returned due to the EU Consumer's handling of the Items beyond what is necessary to establish the nature, characteristics and functioning of the Item. No restocking fees will be applied to refunds under this subsection. The right of cancellation does not apply to: (A) the supply of any Item made to the Buyer's specifications; (B) the supply of any Item which may deteriorate or expire rapidly; (C) the delivery of any Item which is not suitable for return due to health protection or hygienic reasons if unsealed by the Buyer after delivery, or which are, after delivery, mixed inseparably (according to their nature) with other items; (D) the delivery of sealed video or audio recordings or of sealed software if unsealed by the Buyer after delivery; and (E) the supply of digital content if the Buyer accepted when it placed the order that delivery could be started and that the Buyer could not cancel once delivery had started, or other statutory exceptions.

(b) To exercise this right of cancellation, an EU Consumer must send written notice during the Cancellation Period to EU Consumer Rights, 1stdibs.com, Inc., 51 Astor Place, 3rd Floor, New York, NY 10003 or email

Calderwood015

us at support@1stdibs.com with the subject line "EU Consumer Rights." The notice should state your name, residential address, contact details and email address, 1stdibs account number, invoice number, Item Number, date of delivery to your possession, and that you wish to exercise the EU Consumer Rights Directive right of cancellation.

20. Refusal of Transaction.

1stdibs reserves the right to withdraw any Item from the Site, to amend any content on the Site, or to refuse service to anyone at any time in its sole discretion. 1stdibs will not be liable to any Seller, User, or Buyer or any other third party because it has withdrawn any Item from the Site, amended any of the content or denied access to the Site.

21. Copyright. Notice and Take Down Procedures.

(a) 1stdibs will publish on the Site various text, pictures, images audio recordings, and video that have been supplied, owned, or licensed by the Sellers ("Seller Content") and for which Sellers have provided appropriate license for publication by 1stdibs.

(b) We respond to notices of alleged copyright infringement as required by the United States Digital Millennium Copyright Act (DMCA). If you believe that your work has been copied in a way that constitutes copyright infringement, please provide 1stdibs with the following written information: (i) an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest; (ii) a description of the copyrighted work that you claim has been infringed upon; (iii) a description of where the material that you claim is infringing is located on the Site; (iv) your name, address, telephone number, and email address; (v) a statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; and (vi) a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf. Our copyright agent for notice of claims of copyright infringement on the Site can be reached as follows: 1stdibs.com, Inc. 51 Astor Place, 3rd Floor, New York, NY 10003; Attention: Marketplace Trust. If you become aware that material appears on this site in violation of a copyright please notify us by mail at the aforementioned address or by email at copyright@1stdibs.com. We maintain a log of DMCA notices, act on same, and have adopted and implemented a policy that provides for notification to Sellers and/or Site users of claims of infringement and for the termination of Sellers/Site users who are repeatedly and credibly accused of copyright infringement, and we may terminate this Agreement as against a Seller who is a repeat infringer.

(c) Restoration of Removed Content: If a User/Seller which posted content believes that their content was removed or disabled by mistake or misidentification, the User/Seller may send us (via mail or email at the addresses in the preceding paragraph) a written counter-notification which includes the following: (i) your electronic or physical signature; (ii) a description of the content that was removed and where the material that has been removed or disabled was located on the Site before it was removed/disabled; (iii) your name, address, telephone number, and e-mail address; (iv) a statement by you, made under penalty of perjury, that you have a good faith belief that the material identified above was removed or disabled as a result of a

Calderwood016

mistake or misidentification of the material to be removed or disabled; and (v) a statement that: 1) you consent to the jurisdiction of the Federal District Court in which your address is located, or in New York, NY if your address is outside the United States, and 2) that you will accept service of process from the person who provided notification of infringement or an agent of such person. We may, after investigation and based upon our findings, restore the removed or disabled content following ten (10) business days from the date that we received a proper written counter notification, but will not do so if (among other potential reasons) our copyright agent first receives notice that a court action has been filed to restrain us or you from engaging in infringing activity related to the removed or disabled content.

22. Proprietary Rights.

(a) As between Users and 1stdibs, (or other company whose marks appear on the Site), 1stdibs (or the respective company) is the owner and/or authorized user of any trademark, registered trademark and/or service mark appearing on the Site, and is the copyright owner or licensee of the Content and/or information on the Site, unless otherwise indicated.

(b) Except as otherwise provided herein, use of the Site does not grant you a license to any Content, features or materials you may access on the Site and you may not modify, rent, lease, loan, sell, distribute or create derivative works of such Content, features or materials, in whole or in part. Any commercial use of the Site is strictly prohibited, except as allowed herein or otherwise approved by us. You may not download or save a copy of any of the Content or screens for any purpose except as otherwise provided by 1stdibs. If you make use of the Site, other that as provided herein, in doing so you may violate copyright and other laws of the United States, other countries, as well as applicable state laws and may be subject to liability for such unauthorized use. We do not grant any license or other authorization to any user of our trademarks, registered trademarks, service marks, other copyrightable material or any other intellectual property by including them on the Site.

(c) The information on the Site including, without limitation, all site design, text, graphics, interfaces, and the selection and arrangements is protected by law including copyright law.

(d) Product names, logos, designs, titles, graphics, words or phrases may be protected under law as the trademarks, service marks or trade names of 1stdibs.com, Inc. or other entities. Such trademarks, service marks and trade names may be registered in the United States and internationally.

(e) Without our prior written permission, you agree not to display or use our trademarks, service marks, trade names, other copyrightable material or any other intellectual property in any manner.

(f) All images created or produced or modified by 1stdibs are the sole property of 1stdibs. 1stdibs may use any such image to promote the Site or for any other purpose at any time without restriction.

23. User Submitted Content.

(a) Users are responsible for any User Content posted to the site. "User Content" means any content you post to the site, which may include reviews, comments, image uploading, captions, participating in forums,

Calderwood017

and other such features that allow Users to add content to the site. 1stdibs is not responsible for the personally identifiable or other information you choose to submit as User Content, and we reserve the right to remove any User Content generated by any user at our sole discretion. By posting to the Site, you understand that once you post User Content, your content becomes public. We are not responsible for keeping any User Content confidential so if you do not want anyone to read or see that content, do not submit or post it to the Site.

(b) If we allow you to upload User Content, you may not: (i) provide User Content that you do not have the right to submit, unless you have the owner's permission; this includes material covered by someone else's copyright, patent, trade secret, privacy, publicity, or any other proprietary right; (ii) forge headers or manipulate other identifiers in order to disguise the origin of any User Content you provide; (iii) provide any User Content that contains lies, falsehoods or misrepresentations that could damage us or anyone else; (iv) provide User Content that is illegal, obscene, defamatory, libelous, threatening, pornographic, harassing, hateful, racially or ethnically offensive, or encourage conduct that would be considered a criminal offense, give rise to civil liability, violate any law, or is otherwise inappropriate; (v) impersonate anyone else or lie about your affiliation with another person or entity in your User Content; (vi) use meta tags or any other "hidden text" utilizing any of our or our suppliers' product names or trademarks in your User Content; or (vii) provide User Content which disparage us or our vendors, partners, the Seller, representatives and affiliates.

(c) Except as otherwise specifically provided, if you post content or submit material to the Site, you grant us a non-exclusive, royalty-free, perpetual, irrevocable, and fully sub-licensable right to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, and display such content throughout the world in any media. You represent and warrant that you own or otherwise control all of the rights to the content that you post; that the content is accurate; that use of the content you supply does not violate these Terms or any law or regulation; and the content will not cause injury to any person or entity. We have the right but not the obligation to monitor and edit or remove any activity or content. User Content comes from a variety of sources. We do not endorse, or support any views, opinions, recommendations, or advice that may be in User Content, nor do we vouch for its accuracy or its reliability, usefulness, safety or intellectual property rights of any User Content. We take no responsibility and assume no liability for any User Content posted by you or any third party.

24. Third Party Sites.

(a) Users may be able to link to third party websites ("Linked Sites") from the Site. Linked Sites are not, however, reviewed, controlled or examined by us in any way and we are not responsible for the content, availability, advertising, products, information or use of user information or other materials of any such Linked Sites, or any additional links contained therein. These links do not imply our endorsement of, or association with, the Linked Sites. It is your sole responsibility to comply with the appropriate terms of service of the Linked Sites as well as with any other obligation under copyright, secrecy, defamation, decency, privacy, security and export laws related to the use of such Linked Sites and any content contained thereon. In no event shall we be liable, directly or indirectly, to anyone for any loss or damage arising from or occasioned by the creation or use of the Linked Sites or the information or material accessed through these Linked Sites. You should direct any concerns to that website's administrator or webmaster. We reserve the exclusive right,

Calderwood018

at its sole discretion, to add, change, decline or remove, without notice, any feature or link to any of the Linked Sites from the Site and/or introduce different features or links to different users.

(b) Permission must be granted by us for any type of link to the Site. To seek our permission, you may write to us at the address below. We reserve the right, however, to deny any request or rescind any permission granted by us to link through such other type of link, and to require termination of any such link to the Site, at our discretion at any time.

25. Modification.

(a) 1stdibs has control over the look, feel, content, operations and evolution of the Site, and may modify the Site and any content in our sole discretion

(b) We may modify these Terms from time to time without notice to you. The provisions contained herein supersede all prior notices or statements regarding our Terms with respect to this Site. We encourage you to check the Site frequently to see the current Terms in effect and any changes that may have been made. By using the Site following any modifications to the Terms you agree to be bound by the modifications.

(c) We reserve the right, for any reason, in our sole discretion and without notice to you, to terminate, change, suspend or discontinue any aspect of the Site, including, but not limited to, information, products, data, text, music, sound, photographs, graphics, video, messages or other materials ("Content"), features and/or hours of availability, and we will not be liable to you or to any third party for doing so. We may also impose rules for and limits on use of the Site or restrict your access to part, or all, of the Site without notice or penalty. We have the right to change these rules and/or limitations at any time, in our sole discretion.

26. Site Monitoring.

1stdibs reserves the right, but accepts no obligation, to monitor any activity and content on the Site. 1stdibs may investigate any reported violations of applicable law, rule or regulation applicable to Users, Buyers or transactions on the Site and take action that it deems appropriate, including but not limited to issuing warnings, suspending or terminating service, denying access or removing any content from the Site. 1stdibs may also investigate the use of a credit card by a Buyer and take such action as 1stdibs deems appropriate, including but not limited to canceling any offer placed by such Buyer.

27. International Use of the Site.

(a) Many of 1stdibs services, including the Site, are accessible to Sellers, Buyers, and Users outside of the US. 1stdibs may offer certain programs, tools, and Site experiences of interest to those Sellers, Buyers, and Users, such as estimated local currency conversion and international shipping calculation tools. Sellers, Buyers, and Users are responsible for complying with all laws and regulations applicable to the international sale, purchase, and shipment of items.

(b) Users authorize 1stdibs to use automated tools to translate the User's Site content and User and Buyer-to-Seller communications, in whole or in part, into local languages where such translation solutions are available. 1stdibs may provide Users with tools which will enable the User to translate content upon request.

The accuracy and availability of any translation are not guaranteed and 1stdibs is not liable in any way to the Seller, Buyer, or User for any loss suffered where the automated tools are used.

28. Consent to Processing.

(a) By providing any personal information to the Site, all Users, including without limitation, Users in the State of California and in the European Union, fully understand and unambiguously consent to the collection and processing of such information in the United States. For further information data, please see our privacy policy available at: www.1stdibs.com/about/privacy-policy/.

(b) We control and operate the Site from our offices in the United States of America, and all information is processed within the United States or at the location of our service providers. We do not represent that materials on the Site are appropriate or available for use in locations outside the United States. Persons who choose to access the Site from other locations do so on their own initiative, and are responsible for compliance with local laws, if and to the extent local laws are applicable.

(c) Users agree to comply with all applicable laws, rules and regulations in connection with their use of the Site. The Site may be used only for lawful purposes and in a lawful manner. Without limiting the generality of the foregoing, you agree to comply with all applicable laws regarding the transmission of data exported from the United States or the country in which you reside as well as the restrictions on import or export of Items from the Seller's country to your country.

29. Site Unavailability.

(a) You acknowledge that temporary interruptions in the availability of the Site may occur from time to time as normal events.

(b) We may decide to cease making available the Site or any portion of the Site at any time and for any reason. Under no circumstances will 1stdibs or the Sellers be held liable for any damages due to such interruptions or lack of availability.

30. Prohibited Use.

The Site may be used only for lawful purposes by individuals using authorized services of 1stdibs. You are responsible for your own communications, including the upload, transmission and posting of information, and are responsible for the consequences of their posting on or through the Site. 1stdibs specifically prohibits any use of the Site, and requires all Users to agree not to use the Site, for any of the following: (i) posting any information or using a payment mechanism which is incomplete, false, inaccurate or not your own; (ii) impersonating another person; (iii) constituting or encouraging conduct that would constitute a criminal offense, giving rise to civil liability or otherwise violate any city, state, national or international law or regulation or which fails to comply with accepted Internet protocol; (iv) posting material that is copyrighted or otherwise owned by a third party unless you are the copyright owner or have the permission of the owner to post it; (v) posting material that reveals trade secrets, unless you own them or have the permission of the owner; (vi) posting material that infringes on any other intellectual property, privacy or publicity right of

Calderwood020

another; (vii) transmitting or transferring (by any means) information or software derived from the site to foreign countries or certain foreign nations in violation of US export control laws; or (viii) attempting to interfere in any way with the Site's or 1stdibs' networks or network security, or attempting to use the Site to gain unauthorized access to any other computer system.

31. Security Rules.

Violations of system or network security may result in civil or criminal liability. 1stdibs will investigate occurrences and may involve, and cooperate with, law enforcement authorities in prosecuting the user or users who are involved in such violations. Users are prohibited from violating or attempting to violate the security of the Site, including, without limitation, the following: (i) accessing data not intended for you or logging into a server or account which you are not authorized to access; (ii) attempting to probe, scan or test the vulnerability of a system or network or to breach security or authentication measures without proper authorization; (iii) attempting to interfere with service to any user, host or network, including, without limitation, via means of submitting a virus, worm, Trojan Horse or other harmful code to the Site, overloading, "flooding", "mailbombing" or "crashing", or sending unsolicited e-mail, including promotions and/or advertising of products or services; or (iv) forging any TCP/IP packet header or any part of the header information in any e-mail or newsgroup posting.

32. Termination of Use.

1stdibs expressly reserves the right to terminate the use of, or to refuse to permit the use of, the Site by any person or entity, at the sole discretion of 1stdibs, for any reason or no reason at all, and without prior notice. In the event of termination, any rights or obligations regarding pending or completed purchases, or your indemnity obligations related to use of the Site, shall survive such termination.

33. Indemnity.

All Users agree to defend, indemnify and hold 1stdibs.com, Inc., its affiliates, or any of their respective directors, officers, employees, agents, partners, subsidiaries, divisions, successors, suppliers, distributors, vendors, contractors, and representatives harmless from any and all claims, liabilities, damages, costs and expenses, including reasonable attorneys' fees, in any way arising from, related to or in connection with their use of the Site, their purchase or sale of Items, the nature or quality of items, their disputes with any Seller or Buyer, as the case may be, in connection with use of the Site, their violation of any law, their violation of these Terms or their posting or transmission of any User Content or materials on or through the Site, including, but not limited to, any third party claim that any information or materials such Site user provides infringes any third party proprietary right. All Site users agree to cooperate as fully as reasonably required in the defense of any claim. This indemnification obligation will survive the termination of these Terms and your use of the Site.

34. Disclaimer of Warranties.

(a) You **understand and agree that:** The Site is provided on an "AS-IS" and "AS AVAILABLE" basis. 1stdibs makes no representation or warranty of any kind, express or implied, with respect to the Site, any Item(s)

Calderwood021

offered for sale or sold on or through the Site, or any Seller, including without limitation: (i) any representation or warranty regarding the character, reputation or business practices of the Seller; (ii) any representation or warranty with respect to title to or delivery of any Item; (iii) any representation or warranty with respect to intellectual property rights in any Item; (iv) any representation or warranty concerning the availability, accuracy, completeness, usefulness, or content of information; (v) any representation or warranty of title, non-infringement, merchantability or fitness for a particular purpose; (vi) any representation or warranty that the Site meets the User's requirements, will always be accessible, uninterrupted, timely, secure or operate without error or that defects will be corrected; or (vii) any representation or warranty that any Item conforms to its description or the colors, texture and detail shown on the User's computer monitor.

(b) Any Buyer must direct all claims regarding any Item to the Seller and must resolve any dispute regarding any Item directly with the Seller.

(c) 1stdibs does not endorse, warrant or guarantee any products or services offered or provided by or on behalf of Sellers on or through the Site. 1stdibs is not a party to any transaction between Buyers and Sellers (unless specifically requested and notified to the parties in writing).

(d) No advice, results or information, or materials whether oral or written, obtained by you through the Site shall create any warranty by 1stdibs not expressly made herein. If you are dissatisfied with the Site, your sole remedy is to discontinue using the Site.

(e) Any material downloaded or otherwise obtained through the use of the Site is done at your own discretion and risk, and you will be solely responsible for any damage that results from the download of any such material.

35. Release.

You expressly agree to release 1stdibs.com, Inc., its affiliates, or any of their respective directors, officers, employees, agents, partners, subsidiaries, divisions, successors, suppliers, distributors, vendors, contractors, and representatives (the "Released Parties"), and each of the foregoing, from any and all manner of action, claim or cause of action or suit, at law or in equity, and from any and all losses, damages, costs or expenses, including without limitation court costs and attorneys' fees, which you may have against the Released Parties, or any of them, known or unknown, disclosed or undisclosed, which arise out of or relate in any way to a dispute. You further waive any applicable rights under Section 1542 of the California Civil Code, and any similar law of any applicable jurisdiction, which states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." You agree that no joint venture, partnership, employment, or other agency relationship exists between you and 1stdibs as a result of these Terms or your use of the Site.

36. Limitation of Liability.

(a) In no event shall 1stdibs.com, Inc., its affiliates, or any of their respective directors, officers, employees, agents, partners, subsidiaries, divisions, successors, suppliers, distributors, vendors, contractors, and

representatives be liable for any indirect, special, incidental, consequential, exemplary or punitive damages arising from, or directly or indirectly related to the use of, or the inability to use, the Site or the content, materials and function related thereto, including, without limitation, loss of revenue, or anticipated profits, or lost business, data or sales, or cost of substitute services, even if 1stdibs or its representative or such individual has been advised of the possibility of such damages.

(b) Some jurisdictions do not allow the limitation or exclusion of liability, so some of the above limitations may not apply to you. In no event shall the total liability of 1stdibs to any User for all damages, losses, and causes of action (whether in contract or tort, including, but not limited to, negligence or otherwise) arising from the Terms or your use of the Site exceed, in the aggregate, **$100.00**. Without limiting the foregoing, in no event shall 1stdibs.com, Inc., its affiliates, or any of their respective directors, officers, employees, agents, partners, subsidiaries, divisions, successors, suppliers, distributors, vendors, contractors, and representatives providing information on this Site have any liability for any damages or losses arising out our or otherwise incurred in connection with the loss of any data or information contained in your account or otherwise stored by or on behalf of 1stdibs.

37. Dispute Resolution.

(a) Any dispute, controversy or claim arising out of or relating to these Terms, or its breach, which cannot be resolved between the parties through reasonable negotiation shall be submitted to the American Arbitration Association ("AAA") for mandatory binding arbitration in front of a single arbitrator chosen in accordance with the AAA Rules. Discovery shall be permitted, but only to the extent that the documents are directly relevant to and needed for fair resolution of one or more of the issues of importance and can be located and produced at a cost that is reasonable in the context of all surrounding facts and circumstances. When the cost and burden of discovery are disproportionate to the likely importance of the requested materials, the arbitrator may deny the requests or require that the requesting party advance the reasonable cost of production to the other party.

(b) The arbitrator may not award non-monetary or equitable relief of any sort, nor award damages inconsistent with these Terms. All aspects of the arbitration shall be treated as confidential. Neither the parties nor the arbitrator may disclose the existence, content or results of the arbitration, except as necessary to enforce the results of the arbitration or to comply with legal or regulatory requirements. The arbitrator shall render its award in writing and will include the findings of fact and conclusion of law upon which the award is based. The result of the arbitration shall bind the parties and judgment on the arbitrators' award may be entered in any court having jurisdiction. In addition to any and all other relief to which a party may be entitled, the arbitrator shall award reasonable attorneys' fees and costs, including reasonable expert witness fees and costs, to the prevailing party (should there be one) in any such arbitration.

(c) Waiver of Jury Trial; Individual Basis; Equitable Relief. The parties surrender and waive the right to submit any dispute to a court or jury, or to appeal to a higher court. The parties agree to arbitration on an individual basis. Where enforceable, neither party shall be entitled to join or consolidate claims by or against other Sellers or persons, or arbitrate any claim as a class representative, class member or in a private attorney general capacity. Unless both parties agree otherwise, the arbitrator may not consolidate or join more than

Calderwood023

one person's or party's claims, and may not otherwise preside over any form of a consolidated, representative, or class proceeding. Also, the arbitrator may award relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect other Site Users or Sellers. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed, and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(d) Notwithstanding the foregoing, nothing in these Terms shall prohibit either party from seeking and obtaining from a court of competent jurisdiction (without necessity of posting bond) injunctive relief in order to preserve the status quo and/or avoid irreparable harm for which monetary damage would be insufficient.

(e) The place of arbitration shall be the borough of Manhattan, City of New York, NY, USA, and the proceedings shall be conducted in the English language. These Terms shall be governed by the United States Federal Arbitration Act to the exclusion of any inconsistent state laws and the arbitrator shall follow the law and judicial precedents that a United States District Judge sitting in the Southern District of New York would apply to the dispute.

38. Choice of Law.

These Terms, and any dispute arising therefrom, shall be governed by and in accordance with the laws of the State of New York without regard to conflicts of law.

39. Notices.

Any notices shall be given by postal mail addressed to 1stdibs.com, Inc., 51 Astor Place, 3rd Floor, New York, NY 10003, to the attention of Legal Department [if to 1stdibs], or to the e-mail address provided to 1stdibs and currently on record [if to a User]. Notices shall be deemed to have been given 24 hours after the e-mail was sent, unless 1stdibs is notified that the e-mail address is invalid, in which event 1stdibs may give notice by postal mail at the address provided to 1stdibs by the User upon registration. Notice given by postal mail shall be deemed to have been given three (3) business days after the date of mailing.

40. General Information.

If any provision of these Terms is deemed unlawful, void or for any reason unenforceable, such provision(s) will be deemed severable from the rest of the Terms and will not affect the validity and enforceability of the rest of the Terms. Failure of 1stdibs to exercise any rights or remedies will not constitute a waiver of any rights or remedies available to 1stdibs under these Terms or at law. These Terms represent the entire agreement between Users and 1stdibs and supersede and replace any other agreement between the parties including but not limited to any previous Terms as they may have applied between Users and 1stdibs. Paragraph headings are for convenience only and not for interpretation of these Terms.

41. Contact Us.

To contact us with any questions or concerns in connection with these Terms, or the Site, please write to us at: 1stdibs.com, Inc., 51 Astor Place, 3rd Floor, New York, NY 10003, or email us at support@1stdibs.com.

42. Effective Date.

These Terms are effective as of January 1, 2020.

Calderwood025

# <u>EXHIBIT 6</u>

**1stdibs** <noreply-mc@1stdibs.com>                                    Mon, Sep 6, 2021, 9:10 PM    ☆    ↩    ⋮

to me ▾

**UPDATE: Do not reply to this email.** Please visit Message Center to respond to this message. This is an automated email from an address that cannot accept replies.

# 1stDIBS

Dashboard          Message Center          Contact 1stDibs

Carl sent you a message about Jacques Adnet Pair of Modernist Club Chairs.

"Please send invoice and quote for all other adnet to (email hidden) thanks and god bless

Carl Erik Rinsch"

---

**Terms of Service Reminder**

Sharing contact information is not allowed. All transactions must be completed on 1stDibs. Learn More

**REPLY WITH OFFER**

**REPLY TO MESSAGE**



### Jacques Adnet Pair of Modernist Club Chairs

List Price:                                      $22,500.00

Reference #                                      #1401

1stDibs Reference #                      LU843718457312

Calderwood001